USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-20-11

**MS&K**

**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Lauren J. Wachtler
Partner
(917) 546-7705 Phone
(917) 546-7675 Fax
ljw@msk.com

October 14, 2011

**MEMO ENDORSED**

OCT 17

BY HAND

Honorable John F. Keenan
United States District Court for the Southern District of New York
500 Pearl Street
New York, NY 10007

Re:   Glenclova Investment Co. v. Trans-Resources, Inc., et al. (08-cv-7140)(JFK)

Dear Judge Keenan:

We are counsel to Third Party Defendant and Counterclaim Plaintiff Arie Genger ("Arie"), and submit this letter to request a pre-motion conference as soon as possible in connection with Arie's anticipated motion to dismiss or stay this action based on (i) the domestic relations exception to diversity jurisdiction (see e.g. *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976), and (ii) *Colorado River* abstention in favor of a concurrent New York State court action.

*Background*

This dispute arises directly from the transfer of stock made pursuant to the express provisions of a Court-Ordered Stipulation of Settlement incorporated into a Divorce Judgment (the "Divorce Decree") in a New York State divorce action entitled *Dalia Genger v. Arie Genger* ("The Genger Divorce Action"). In accordance with the terms of the Divorce Decree, Arie and his former wife (and counterclaim defendant) Dalia Genger equitably distributed various marital assets, including ownership interests in TPR (a Genger Family holding company). Specifically, (i) Arie transferred his majority stake in TPR to Dalia, (ii) TPR divested itself of its majority stake in Trans-Resources, Inc. ("TRI"), a company founded by Arie in 1985, and (iii) TPR transferred its majority stake in TRI to Arie and to two trusts formed for his two adult children, Sagi and Orly (the "2004 Transfers"). Pursuant to the Divorce Decree, Arie was to maintain voting control over these TRI shares for his lifetime.[1] The Divorce Decree also provided that the 2004 Transfers were "a fundamental part" of the Court-Ordered divorce stipulation, and critically acknowledged that if the 2004 Transfers were ever held invalid, Arie could seek court-ordered reformation of the Settlement to give effect to the original intent of the parties to the fullest extent possible. In this regard, the New York Supreme Court retained jurisdiction over these equitable marital distribution issues.

In August of 2008, the minority shareholders of TRI, collectively referred to as the Trump Group, hatched a plan to purchase the TRI shares that had been transferred to the Sagi Trust under the 2004 Transfers pursuant to the Divorce Decree. Then, the Trump Group, now asserting majority

---

[1] The details of the Court-Ordered Stipulation of Settlement are set forth in Arie's Answer and Counterclaim in this action at paragraphs 36-92.

4170853.1/43419-00002

12 East 49th Street, 30th Floor, New York, New York 10017-1208
Phone: (212) 509-3900   Fax: (212) 509-7239   Website: www.msk.com

MITCHELL SILBERBERG & KNUPP LLP

Honorable John F. Keenan
October 14, 2011
Page 2

control over TRI, brought an *in rem* proceeding in Delaware Chancery Court, to determine the composition of the TRI Board and claimed that the 2004 Transfers were invalid under a 2001 TRI Stockholders Agreement. In August of 2010 the Chancery Court held, *inter alia*, (i) that the 2004 Transfers of TRI shares made pursuant to the Divorce Decree were invalid and (ii) that ownership of the TRI shares that had been transferred to Arie and to the two Trusts for his children reverted to TPR. The Court also held that TPR, controlled by Sagi, had the right to sell all of these TRI shares to the Trump Group.

Arie appealed, claiming, *inter alia,* that he was a beneficial owner of the TRI shares transferred pursuant to the Divorce Decree and that the Chancery Court had no jurisdiction to determine the ultimate owners, or the validity of any purported sale, of the subject TRI shares. In July of 2011, the Delaware Supreme Court, *inter alia*, affirmed that part of the Chancery Court ruling holding that the 2004 Transfers were invalid because they did not comply with restrictions in the 2001 TRI Stockholders Agreement, but reversed the Chancery Court's determinations as to ultimate beneficial ownership of the TRI shares, holding that the Chancery Court had no jurisdiction to make such a determination, and holding that the beneficial ownership of these TRI shares was an open issue to be tried in a plenary action where there was also jurisdiction over all indispensible parties. *See* Amended Answer and Counterclaims, ¶¶171-176.

While awaiting the appeal in Delaware, Arie commenced an action in New York Supreme Court, index number 651089/2010 ("The New York State Action") in order to restrain the disposition of the proceeds of the purported sale of the Sagi Trust TRI shares to the Trump Group, and for reformation as permitted under the Divorce Decree because the 2004 Transfers were declared invalid. In addition, in the New York State Action, Arie is seeking (i) a determination that Arie is the beneficial owner of the subject TRI shares, (ii) an injunction enjoining the defendants from selling the TRI shares, (iii) a determination that TPR was not authorized to sell the shares that reverted to TPR, and (iv) various related tort claim against the defendants.

These are the exact issues raised before Your Honor in this case.[2] Importantly, there has been significant substantive advancement of the claims in the New York State Action: the state court has already issued certain preliminary injunctive relief freezing the proceeds from purported sales of the subject TRI shares, and a further preliminary injunction application has been briefed and argued to the state court to enjoin TPR, the Trump Group and, Sagi from transferring, devaluing or diluting the subject TRI shares in light of the Delaware Supreme Court opinion. That motion is presently *sub judice*. The instant action before Your Honor has been stayed, virtually from inception pending rulings by the Delaware courts. Aside from the filing of pleadings, there has been little further activity in this case.

In light of the ongoing parallel New York State Action there is good cause for dismissing or staying the instant action, as outlined below and as will be more fully addressed in Arie's anticipated motion.

---

[2] A copy of Arie's Third Amended Complaint in the concurrent state action is attached hereto, and can be compared to amended answer and counterclaims in this case. Arie was required to file this compulsory counterclaim in this case, even though the State Court action was filed by Arie prior to the assertion of any claims made against Arie in the case before Your Honor.

4170853.1/43419-00002

MITCHELL SILBERBERG & KNUPP LLP

Honorable John F. Keenan
October 14, 2011
Page 3

### *The Domestic Relations Exception*:

The federal courts have long recognized a domestic relations exception to the exercise of diversity jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Barber v. Barber*, 62 U.S. 582, 584 (1895); *American Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990); *see also Elk Grove Unified School District v. Newdow*, 542 U.S. 1, 13 (2004)("it is appropriate for the federal courts to leave delicate issues of domestic relations to the state courts."); *Bossom v. Bossom*, 551 F.2d 474, 475 (2d Cir. 1976) (in dicta, noting that requesting modification of a divorce decree "would seem to involve a sufficient meddling with the judgment of divorce to bring this case within the matrimonial exception"). The courts in this circuit have abstained from exercising jurisdiction even where the case is "on the verge of" the domestic relations exception. *See American Airlines, supra*, 905 F.2d at 14; *see also Ranney v. Bauza*, 2011 WL 4056896 at *3-*5 (S.D.N.Y., August 31, 2011) (abstaining where tort claims were inherently intertwined with marital settlement and where deferring to state court would avoid duplicative litigation); *Petersen v. Petersen*, 640 F. Supp. 719, 720-21 (S.D.N.Y. 1986)(Leval, J.)(emphasizing the importance of deferring to the expertise of the state courts in cases "on the verge of" being matrimonial in nature as where the dispute that goes to the validity of a settlement incorporated into a divorce decree issued by a New York court).

### *Colorado River Abstention*:

This Court should also abstain from exercising jurisdiction in light of the parallel litigation in New York state court in the interest of "wise judicial administration, giving regard to conservation of judicial resources . . . ." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 817 (1976); *see also, Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1 (1983) (enumerating and expounding upon the *Colorado River* abstention factors). Avoiding piecemeal and duplicative litigation is an essential *Colorado River* factor that "goes to the heart of the abstention doctrine." *General Star Int'l Indem. Ltd. v. Chase Manhattan Bank*, 2002 WL 850012 at *7 (S.D.N.Y. May 3, 2002), *affirmed* 2003 WL 282452 (2d Cir. February 7, 2003). Moreover, given the substantive advancement of the state court proceedings and the fact that the claims are controlled by New York state law and are focused on a modification of a New York Court-Ordered Divorce Decree (implicating the domestic relations exception), abstention is appropriate here. *See generally, Arkwright-Boston Manufacturers Mutual Ins. Co. v. City of New York*, 762 F.2d 205, 211 (2d Cir. 1985).

In light of the foregoing, we respectfully request a pre-motion conference with the Court in connection with Arie's anticipated motion to dismiss or stay this matter in light of the ongoing parallel proceeding in New York State Action.

Respectfully submitted,

*[signature]*
Lauren J. Wachtler
of
Mitchell Silberberg & Knupp LLP

cc: all counsel (*via email*)

> The application is granted.
> The parties are directed to appear for a pre-motion conference on November 3, 2011 at 10:30 a.m.
> SO ORDERED.
> Dated: New York, N.Y.
> October 20, 2011
>
> *[signature]*
> U.S.D.J.

4170853.1/43419-00002