```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-14-12 _____
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
GLENCLOVA INVESTMENT CO.,                    :
                                             :
                        Plaintiff,           :
                                             :
        -against-                            :   No. 08 Civ. 7140 (JFK)
                                             :
TRANS-RESOURCES, INC. and TPR                :
INVESTMENT ASSOCIATES, INC.,                 :
                                             :
                        Defendants.          :
-----------------------------------X
PEDOWITZ & MEISTER LLP,                      :
                                             :
                        Plaintiff,           :
                                             :
        -against-                            :   No. 11 Civ. 5602 (JFK)
                                             :
TPR INVESTMENT ASSOCIATES, INC.,             :
GLENCLOVA INVESTMENT CO., TR                 :
INVESTORS, LLC, NEW TR EQUITY I,             :
LLC, NEW TR EQUITY II, LLC, DALIA            :
GENGER, as trustee of the Orly               :
Genger 1993 Trust, and ORLY                  :
GENGER,                                      :
                                             :
                        Defendants.          :
-----------------------------------X
SKADDEN, ARPS, SLATE, MEAGHER &              :
FLOM, LLP,                                   :
                                             :
                        Plaintiff,           :
                                             :
        -against-                            :   No. 11 Civ. 7923 (JFK)
                                             :
TPR INVESTMENT ASSOCIATES, INC.,             :
GLENCLOVA INVESTMENT CO., TR                 :
INVESTORS, LLC, NEW TR EQUITY I,             :
LLC, NEW TR EQUITY II, LLC, and              :
ARIE GENGER,                                 :   **Opinion and Order**
                                             :
                        Defendants.          :
-----------------------------------X

1

APPEARANCES:

    For Glenclova Investment Co.; TR Investors, LLC; New TR Equity I, LLC; New TR Equity II, LLC; Eddie Trump; Jules Trump; Mark Hirsch; Skadden, Arps, Slate, Meagher & Flom, LLP
Thomas Allingham
Anthony Clark
William Frank
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

    For TPR Investment Associates, Inc.
John Dellaportas
DUANE MORRIS, LLP

    Evangelos Michailidis
SNOW BECKER KRAUSS, P.C.

    For Arie Genger
Paul Montclare
Lauren Wachtler
MITCHELL SILBERBERG & KNUPP LLP

    For Dalia Genger; Pedowitz & Meister LLP
Robert Meister
Marisa Warren
PEDOWITZ & MEISTER LLP

    For Sagi Genger
Alan Sash
McLAUGHLIN & STERN LLP

    For Orly Genger
Elliot Silverman
WACHTEL, MASYR & MISSRY LLP

**JOHN F. KEENAN, United States District Judge:**

    Before the Court are ten motions, variously styled, taking competing views on whether the Southern District of New York, the New York Supreme Court, or the Delaware Chancery Court should determine the beneficial ownership of shares in a closely-held corporation.

## I.   Background

### A.   The Parties and Procedural History

These three cases, along with numerous other state court cases, constitute a bitter and seemingly endless battle for control of Trans-Resources, Inc. ("Trans-Resources"), a Delaware corporation that manufactures and sells chemicals for agricultural use.  The contenders include Arie Genger ("Arie") and his adult daughter Orly Genger ("Orly") in one camp; Glenclova Investment Co. ("Glenclova"), TR Investors, LLC ("Investors"), New TR Equity I, LLC, New TR Equity II, LLC, Eddie Trump, Jules Trump, and Mark Hirsch (collectively, the "Trump Group") in a second camp; Arie's former wife Dalia Genger ("Dalia"), who is the trustee of a trust benefitting her estranged daughter Orly, in a third; and, indirectly, former Trans-Resources majority owner TPR Investment Associates, Inc. ("TPR") and its current President, Sagi Genger ("Sagi"), who is Arie and Dalia's adult son.  The following facts are taken from the findings of the Delaware Chancery Court in TR Investors, LLC v. Genger, C.A. No. 3994-VCS, 2010 WL 2901704 (Del. Ch. July 23, 2010); they are consistent with all of the many pleadings in these cases and, unless otherwise noted, are undisputed.

Arie formed Trans-Resources in 1985.  Trans-Resources was a wholly-owned subsidiary of TPR, a Genger family holding company. Arie owned a 51% majority of TPR, through which he controlled

3

Trans-Resources; his wife and children owned minority interests in TPR.  By 2001, Trans-Resources had run into financial difficulty; to save the company from bankruptcy, Jules Trump caused two Trump Group members, Glenclova and Investors to purchase the vast majority of Trans-Resources' outstanding bonds at a substantial discount.  Then, on March 31, 2001, Glenclova and Investors entered into a Stockholders Agreement with Trans-Resources and TPR, pursuant to which Glenclova and Investors converted their bond holdings into a 47.15% equity stake in Trans-Resources.  TPR, which was controlled by Arie, retained the 52.85% majority share.  The Stockholders Agreement prohibited either party from transferring their shares in Trans-Resources to anyone other than a limited number of permitted transferees and required written notice prior to any transfer.  Violation of the terms of the Stockholders Agreement gives non-selling shareholders the right to purchase any invalidly transferred shares.

In 2004, Arie and Dalia divorced.  In connection with their divorce settlement, on October 29, 2004, Arie caused TPR to transfer its 52.85% stake in Trans-Resources as follows: approximately 13.9% to Arie himself (the "Arie Shares"); approximately 19.5% to the Sagi Genger 1993 Trust (the "Sagi Trust"), a trust created for his son's benefit (the "Sagi Trust Shares"); and 19.5% to the Orly Genger 1993 Trust (the "Orly

Trust"), a trust created for his daughter's benefit (the "Orly Trust Shares").[1]  The legitimacy of these transfers is at the heart of the <u>Glenclova</u>, <u>Pedowitz</u>, and <u>Skadden</u> complaints.

In 2008, Trans-Resources again ran into financial difficulty, so Arie offered the Trump Group additional shares in Trans-Resources in exchange for a capital infusion.  The Chancery Court found that in the course of finalizing the deal in June 2008, but not before, the Trump Group learned about Arie's 2004 transfer of Trans-Resources shares to himself and his children's trusts.  Despite the fact that these transfers violated the terms of the 2001 Stockholders Agreement, the Trump Group agreed to go forward with the deal, likely because it would give them majority control of Trans-Resources.  Shortly thereafter, however, Arie reneged on the funding agreement and threatened to sue the Trump Group if they challenged the validity of the 2004 share transfers.  In response, Glenclova invoked its right under the 2001 Stockholders Agreement to purchase all of the Trans-Resources shares Arie transferred to himself, the Sagi Trust, and the Orly Trust in 2004.  Arie disputed Glenclova's right to purchase the shares, so Glenclova filed suit in the Southern District of New York on August 11,

---

[1] For the sake of clarity, the Court adopts the rounded percentage figures as referenced by the parties, cognizant of the fact that they do not add up to 52.85% exactly.

2008 to enforce the Stockholders Agreement.  See Glenclova Inv. Co. v. Trans-Resources, Inc., No. 08 Civ. 7140 (JFK).

To cover all of its bases, the Trump Group also entered into two agreements to separately purchase the shares Arie purported to transfer to himself and his children's trusts in 2004.  First, on August 22, 2008, the Trump Group entered into a stock purchase agreement with TPR, which is controlled by Sagi, and the Sagi Trust to acquire the Sagi Trust Shares – either from TPR or the Sagi Trust, whichever party was judicially determined to own the shares.  Second, the Trump Group entered into a side letter agreement with TPR giving the Trump Group an option to purchase the Arie Shares and the Orly Trust Shares, should a court determine that the 2004 transfers were void such that TPR (and not Arie or the Orly Trust) retained legal and beneficial ownership of the disputed shares.

After acquiring the Sagi Trust Shares, on August 25, 2008, the Trump Group, believing itself to be the majority shareholder of Trans-Resources, elected four representatives to the board of directors and removed Arie as a director.  Arie refused to recognize the Trump Group's majority ownership position, so the Trump Group filed suit in Delaware Chancery Court for a determination pursuant to Title 8, Delaware Code, Section 225 that it was entitled to designate and elect a majority of the board of directors of Trans-Resources.  See TR Investors, LLC v.

6

Arie Genger, C.A. No. 3994-VCS (Del. Ch. Ct.).  The TR Investors
and Glenclova cases, filed in the span of just two weeks, form
the first layer of the jurisdictional conflict now facing the
Court.

     The Trump Group filed two lawsuits, but the parties were
initially able to agree that the dispute should proceed in a
single court.  Although Arie moved to intervene as a defendant
in the Glenclova action on September 5, 2008, the Court
adjourned oral argument on that motion thirteen times while the
Delaware Chancery action advanced through discovery and a three-
day trial.  This was done at Arie's request because he
represented to this Court that the Delaware proceedings would
likely resolve the issues in the federal Glenclova case.
Finally, on July 23, 2010, then-Vice Chancellor Strine issued a
comprehensive opinion in the Delaware Chancery case, finding in
relevant part that:  (1) Arie did not give the Trump Group
notice of the 2004 transfer of Trans-Resources shares to
himself, the Sagi Trust, and the Orly Trust as required under
the 2001 Stockholders Agreement; (2) the 2004 share transfers
were void; and (3) by virtue of the August 22, 2008 letter
agreement, the Trump Group owned the Sagi Trust Shares, giving
the Trump Group majority voting control of Trans-Resources.  TR
Investors, 2010 WL 2901704, at *13-20.  In an opinion dated
August 9, 2010, Vice Chancellor Strine expanded his ruling,

holding that the Arie and Orly Trust share transfers in 2004
were similarly

> invalid.  That left the Trump Group with the right to
> purchase the Shares from TPR, and thus TPR and the
> Trump Group were free to settle that dispute by a new
> bargain for sale.  If the Trump Group exercises its
> rights under the [2008 side] Letter Agreement, it will
> own the shares improperly transferred to [Arie] and
> the Orly Trust, and neither of those transferees ever
> had a legitimate interest in the shares

TR Investors, LLC v. Genger, C.A. No. 3994-VCS, 2010 WL 3279385,
at *3 (Del. Ch. Aug. 9, 2010).

In light of this ruling, on September 1, 2010, the Trump
Group entered into an escrow agreement with TPR, the Orly Trust,
Orly, as beneficiary of the trust, and the law firm of Pedowitz
& Meister LLP ("Pedowitz").  (Escrow Agreement, Declaration of
Robert A. Meister in Support of Dalia Genger's Motion to Enjoin,
Ex. A).  Pursuant to this agreement, in February 2011, the Trump
Group exercised its right to purchase the Orly Trust Shares, but
agreed to deposit the $10,314,005 proceeds of the sale in escrow
with Pedowitz in light of continuing litigation.  Similarly, in
September 2010, the Trump Group entered into an escrow agreement
with TPR and the law firm of Skadden, Arps, Slate, Meagher &
Flom LLP ("Skadden, Arps").  (Escrow Agreement, Declaration of
Lauren J. Wachtler in Support of Arie Genger's Motion to
Dismiss, Ex. I).  In February 2011, the Trump Group exercised
its option to purchase the Arie Shares for $7,428,994.

8

$5,928,994 of the proceeds from the sale of the Arie Shares was deposited in an escrow account with Skadden, Arps, and the remaining $1.5 million was eventually deposited in a second, separate escrow account.

### B.  Additional Litigation

Immediately following Vice Chancellor Strine's July 23, 2010 opinion, Arie and Orly filed suit in New York Supreme Court against TPR, Sagi, and Dalia seeking a declaration that Arie was entitled to reform his divorce settlement as if the 2004 Trans-Resources share transfers never happened; this is little more than a collateral attack on the Delaware Supreme Court ruling. The complaint was later amended to add the Trump Group parties, the Sagi Trust, and Rochelle Fang, the trustee of the Sagi Trust, to the lawsuit.  See Arie & Orly Genger v. Sagi Genger, et al., Index No. 651089/2010 (N.Y. Sup. Ct.).  Arie then obtained several orders in New York Supreme Court, including: (1) an October 5, 2010 order directing that the proceeds of the sale of the Arie Shares to the Trump Group be held in escrow pending a preliminary injunction hearing; and (2) a February 17, 2011 order enjoining TPR and Sagi from using or converting $1.5 million in proceeds they received from the sale of the Arie Shares to the Trump Group.  Thus, Skadden, Arps holds in escrow $1.5 million of the $7,428,994 proceeds of the sale of the Arie Shares, subject to a New York state court injunction.

On August 16, 2010, TPR filed a third-party complaint against Arie in the _Glenclova_ action and stipulated to Arie's right to intervene.  This stipulation resolved Arie's long-delayed motion to intervene.  Arie then filed a number of counterclaims against various parties generally seeking to reform his 2004 divorce settlement so that his 2004 share transfers and loss of control of Trans-Resources would be voided.  The _Glenclova_ counterclaims are identical to the claims in the _Arie & Orly Genger_ New York Supreme Court action.

At the same time Arie was pursuing relief in New York Supreme Court, the Delaware Chancery case went up on appeal to the Delaware Supreme Court.  On July 18, 2011, the Delaware Supreme Court affirmed in part, leaving intact the Chancery Court's findings that the 2004 share transfers were invalid, and that the Trump Group legally purchased the Sagi Trust's 19.5% stake in Trans-Resources, giving the Trump Group majority voting control of the corporation.  However, the Delaware Supreme Court reversed the Chancery Court's August 9, 2010 supplemental determination regarding the beneficial ownership of the Trans-Resources shares transferred to Arie and the Orly Trust.  The Court found that

> [a]n adjudication of who has the right to vote
> disputed corporate shares for Section 225 purposes
> cannot constitute a binding adjudication of who
> beneficially owns those shares, because a Section 225
> action is by its nature an _in rem_, not a plenary,

10

> proceeding.  Only in a plenary proceeding before a
> court that has in personam jurisdiction over the
> litigants may the court adjudicate the litigants'
> property interest in disputed corporate shares.  Here,
> the Orly Trust and TPR were never made parties to a
> plenary proceeding where the trial court had in
> personam jurisdiction over them.

Genger v. TR Investors, LLC, 26 A.3d 180, 201-02 (Del. 2011).

Absent in personam jurisdiction, the Chancery Court erred in

determining the beneficial ownership of the Arie Shares and the

Orly Trust Shares.  Id. at 202-03.  The Delaware Supreme Court

suggested that the Glenclova case in this District would be "an

example of such a plenary proceeding" where jurisdiction could

be obtained over the necessary parties.  Id. at 200 n.88.

    In response to the Delaware Supreme Court ruling, on July

22, 2011, the Trump Group filed a plenary action against Arie

and TPR in Delaware Chancery Court seeking a declaration that it

is both the record and beneficial owner of the Arie Shares.  See

TR Investors, LLC, et al. v. Arie Genger, et al., C.A. No. 6697-

CS (Del. Ch.).

    On August 11, 2011, Pedowitz, the escrow agent for the

$10,314,005 proceeds of the sale of the Orly Trust Shares to the

Trump Group, filed an interpleader action pursuant to 28 U.S.C.

§ 1335 in the Southern District of New York.  See Pedowitz &

Meister LLP v. TPR Inv. Assocs., Inc., et al., 11 Civ. 5602

(S.D.N.Y.).  The Pedowitz complaint states that no party to the

September 1, 2010 Escrow Agreement has made a demand for payment

11

of the escrowed funds, but Orly, as beneficiary of the Orly
Trust, objects to any release of escrowed funds without her
consent. Nevertheless, plaintiff Pedowitz alleges that two or
more of TPR, the Trump Group, Dalia, as trustee of the Orly
Trust, and Orly are adverse claimants to the funds held in
escrow and seeks a determination as to which party is entitled
to the funds. The escrowed funds have since been deposited with
the Clerk of Court.

On October 4, 2011, Dalia, as trustee of the Orly Trust,
filed a plenary action in Delaware Chancery Court against the
Trump Group and TPR seeking a declaration that the Orly Trust is
the beneficial owner of the Orly Trust Shares. See Dalia Genger
v. TR Investors, LLC, et al., C.A. No. 6906-CS (Del. Ch.).
However, on October 26, 2011, Orly obtained a temporary
restraining order in New York Supreme Court preventing Dalia
from proceeding with her plenary action in Delaware Chancery
Court. On November 9, 2011 Orly obtained another temporary
restraining order preventing TPR and the Trump Group from
proceeding in the Dalia Genger plenary action in Delaware
Chancery Court. Thus, the New York Supreme Court has
effectively stayed litigation of the beneficial ownership of the
Orly Trust Shares in Delaware.

On November 7, 2011, Skadden, Arps, the escrow agent for
the $7,428,994 proceeds of the sale of the Arie Shares from TPR

12

to the Trump Group, filed an interpleader action pursuant to 28 U.S.C. § 1335 in the Southern District of New York.  See Skadden, Arps, Slate, Meagher & Flom LLP v. TPR Inv. Assocs., Inc., et al., No. 11 Civ. 7923 (S.D.N.Y.).  The Skadden complaint does not state that any party has made a demand for payment of the escrowed funds, but Arie asserts an interest in the funds and objects to any release.  Thus, plaintiff Skadden, Arps alleges that two or more of TPR, the Trump Group, and Arie are adverse claimants to the funds held in escrow and seeks a determination as to which party is entitled to the funds. $5,928,994 of the escrowed funds has been deposited with the Clerk of Court; the remaining $1.5 million continues to be restrained by the New York Supreme Court.

In summary, there are no fewer than six pending lawsuits in three jurisdictions, all relating to the beneficial ownership of the Arie and Orly Trust Shares:

| Court | Caption | Docket No. | Subject |
|---|---|---|---|
| S.D.N.Y. | Glenclova Inv. Co. v. Trans-Resources, Inc. | 08 Civ. 7140 | Arie Shares and Orly Trust Shares |
| S.D.N.Y. | Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., et al. | 11 Civ. 5602 | Orly Trust Shares |
| S.D.N.Y. | Skadden, Arps, Slate, Meagher & Flom LLP v. TPR Inv. Assocs., Inc., et al. | 11 Civ. 7923 | Arie Shares |
| N.Y. Sup. | Arie & Orly Genger v. Sagi Genger, et al. | 651089/2010 | Arie Shares and Orly Trust Shares |
| Del. Ch. | Dalia Genger v. TR Investors, LLC, et al. | 6906-CS | Orly Trust Shares |

| Del. Ch. | TR Investors, LLC, et al. v. Arie Genger, et al. | 6697-CS | Arie Shares |
|----------|--------------------------------------------------|---------|-------------|

There are, however, other cases pending in New York Supreme Court that present related claims flowing from the same facts as recounted above.  For example, on July 9, 2009, Orly filed suit against her mother Dalia, her brother Sagi, and TPR seeking, inter alia, breach of fiduciary duty and fraud damages for their alleged "looting" of the Orly Trust, including the Orly Trust's interest in TPR.  See Orly Genger v. Dalia Genger, et. al., Index No. 109749/2009 (N.Y. Sup. Ct.).  Additionally, on October 21, 2010, Dalia, in both her individual and trustee capacities, filed suit against her ex-husband Arie, alleging that his failure to validly transfer Trans-Resources shares to the Orly Trust violated their stipulated divorce settlement.  See Dalia Genger v. Arie Genger, Index No. 113862/2010 (N.Y. Sup. Ct.).

## II.   Discussion

By their own actions, the parties have created a headache-inducing jurisdictional conflict; they now ask this Court to clean up the mess they made by determining which of the federal or state courts should decide the issue underpinning all of their claims – that is, the beneficial ownership of the Arie Shares and Orly Trust Shares.  As a general proposition, the Anti-Injunction Act restrains the district court from "grant[ing] an injunction to stay proceedings in a State court

14

except as expressly authorized by Act of Congress."  28 U.S.C. §

2283.  Consequently, prior to August 2011, the Court had no

authority to head off this jurisdictional train wreck by

directing the New York and/or Delaware state courts to stay

their hands.  However, after the filing of no fewer than six

state court lawsuits, the stakeholder plaintiffs came back to

the federal court seeking interpleader.  Interestingly, most of

the parties have no interest in a federal court determination of

the rights of the claimants to the Arie Share and Orly Trust

Share proceeds; instead, they ask the Court to use the

interpleader statute injunction power under 28 U.S.C. § 2361 to

direct them to a single forum.  Their requests come in the form

of various motions to dismiss, stay, and enjoin which,

unsurprisingly, fall into three categories:  (1) TPR and Dalia

want the Court to stay the New York Supreme Court actions and

the Delaware Chancery Court plenary actions and decide on the

merits who beneficially owns the Arie Shares and the Orly Trust

Shares; (2) Arie and Orly move to dismiss the federal actions to

which they are parties and ask the Court to stay the Delaware

Chancery Court actions so the merits of their claims can proceed

in New York Supreme Court; and (3) the Trump Group asks this

Court to stay the federal actions and the New York Supreme Court

actions so the merits of their claims can proceed in Delaware

Chancery Court.

**A.  <u>Pedowitz</u> and <u>Skadden</u> Statutory Interpleaders**

As all the parties invoke the interpleader injunction power as the mechanism for their requested relief, the Court begins its analysis with the viability of the <u>Pedowitz</u> and <u>Skadden</u> interpleader actions.  Orly has moved to dismiss or stay the <u>Pedowitz</u> interpleader (<u>Pedowitz</u> Docket No. 8) and Arie has moved to dismiss or stay the <u>Skadden</u> interpleader (<u>Skadden</u> Docket No. 25) on largely identical grounds, so the Court will address them collectively.

**1.  § 1335 Jurisdiction**

First, Arie argues that the <u>Skadden</u> interpleader action should be dismissed for lack of subject matter jurisdiction. The Court will also consider this argument in relation to the <u>Pedowitz</u> interpleader since "subject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived," obliging the district court "to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 514 (2006) (internal citation omitted).

The sole basis of jurisdiction alleged in the <u>Pedowitz</u> and <u>Skadden</u> interpleader complaints is the federal interpleader statute, 28 U.S.C. § 1335.  Pursuant to this section, the district court has original jurisdiction over statutory interpleader cases where "[t]wo or more adverse claimants, of

16

diverse citizenship . . . are claiming or may claim to be entitled" to money or property worth at least $500.  Only minimal diversity – that is, diversity of citizenship between at least two claimants – is necessary.  See Truck-A-Tune, Inc. v. Re, 23 F.3d 60, 62 (2d Cir. 1994).  The diversity and amount in controversy requirements are prerequisites to the district court's exercise of jurisdiction in a statutory interpleader case.  See Franceskin v. Credit Suisse, 214 F.3d 253, 259 (2d Cir. 2000) (dismissing statutory interpleader claims for lack of subject matter jurisdiction where claimants were all citizens of Argentina, failing to satisfy § 1335's diversity requirement); RCA Records v. Hanks, 548 F. Supp. 979, 981 (S.D.N.Y. 1982) ("Subject matter jurisdiction in statutory interpleader actions rests on diversity of citizenship between any two adverse claimants and an amount in controversy of $500 or more."). Similarly, in this Circuit, "a deposit [with the court of the res in controversy] or a bond is a jurisdictional prerequisite for statutory interpleader relief." Fed. Ins. Co. v. Tyco Int'l Ltd., 422 F. Supp. 2d 357, 396 (S.D.N.Y. 2006) (internal quotation omitted); see Metal Transp. Corp. v. Pac. Venture S.S. Corp., 288 F.2d 363, 365 (2d Cir. 1961) ("As a general rule, when a sum of money is involved, a district court has no jurisdiction of an action of interpleader if the stakeholder deposits a sum smaller than that claimed by the claimants.").

17

With respect to the <u>Pedowitz</u> interpleader, the complaint alleges that TPR is a Delaware corporation, Investors, New TR Equity I, and New TR Equity II are Delaware limited liability companies, Glenclova is a Cayman Islands corporation, and Dalia and Orly are New York residents.  Thus, there is minimal diversity amongst the potential claimants.  The $10,314,005 res more than satisfies the amount in controversy requirement, and the entirety of the res has been deposited with the Clerk of Court.  With respect to the <u>Skadden</u> interpleader, the complaint alleges that TPR is a Delaware corporation, Investors is a New Jersey limited liability company, New TR Equity I and New TR Equity II are Delaware limited liability companies, Glenclova is a Cayman Islands corporation, and Arie is a Florida resident. Again, there is minimal diversity amongst the potential claimants to the $7,428,994 at stake.  However, only $5,928,994 of the res has been deposited with the Clerk of Court.  Skadden, Arps still holds in escrow $1.5 million that it has not deposited into the Court's registry, likely because of the New York Supreme Court restraining order.  Although this jurisdictional defect could be cured by the posting of a bond, it is not the sole barrier to the exercise of jurisdiction.  <u>See</u> <u>Fed. Ins. Co.</u>, 422 F. Supp. 2d at 396; <u>Phillips, Son & Neal, Inc. v. Borghi & Co.</u>, No. 86 Civ. 8544, 1987 WL 27690, at *2 (S.D.N.Y. Dec. 10, 1987).

18

Arie's main challenge to subject matter jurisdiction
involves the adverse claimants requirement of § 1335.  Although
some courts in this Circuit treat the existence of adverse
claimants as an element of the interpleader claim, adversity is
more commonly considered a necessary prerequisite to the
maintenance of subject matter jurisdiction over statutory
interpleader cases.  Compare Coopers & Lybrand, L.L.P. v.
Michaels, No. 94 Civ. 5643, 1995 WL 860760, at *5 (E.D.N.Y. Oct.
31, 1995) ("A jurisdictional prerequisite to [statutory]
interpleader is the existence of adverse claims to property held
in plaintiff's possession."), Pine Run Props., Inc. v. Pine Run
Ltd., No. 90 Civ. 6289, 1991 WL 280719, at *8 (S.D.N.Y. Dec. 26,
1991) (dismissing statutory interpleader claim for lack of
subject matter jurisdiction because "In order to invoke
statutory interpleader, there must exist adverse claims to the
property held in plaintiffs' possession, so that plaintiffs risk
multiple or inconsistent liabilities with respect to the
property"), and Phillips, Son & Neal, Inc., 1987 WL 27690, at *2
("An additional prerequisite for interpleader jurisdiction is
that there be adverse claims to the property made by claimants
of diverse citizenship."), with Catizone v. Memry Corp., 897 F.
Supp. 732, 740 (S.D.N.Y. 1995) (denying plaintiff's motion for
summary judgment on interpleader claim for failure to establish
existence of competing claims to certain securities).  Thus, the

19

Court will consider the issue of adverse claims as to both the
Pedowitz and Skadden interpleader complaints in accordance with
its obligation to ensure the existence of subject matter
jurisdiction.

In order to demonstrate adversity, "[t]he claimants need
not have actually asserted the adverse claims at the time the
interpleader action is filed; the requirements of the
interpleader statute are satisfied if the stakeholder faces even
the prospect of adverse claims being asserted against property
in its possession." Pine Run Props., Inc., 1991 WL 280719, at
*8; see Locals 40, 361 & 417 Pension Fund v. McInerney, No. 06
Civ. 5224, 2007 WL 80868, at *3 (S.D.N.Y. Jan. 9, 2007) (noting
that interpleader jurisdiction will lie where the stakeholder
has "a real and reasonable fear of double liability or
vexatious, conflicting claims"). "However, although a finding
that adverse claims exist may stem from anticipated future
claims, 'interpleader is inappropriate . . . when plaintiff[]
offers only the barest speculation' that such claims will be
interposed." J.B.I. Indus., Inc. v. Suchde, No. 99 Civ. 12435,
2000 WL 1174997, at *15 (S.D.N.Y. Aug. 17, 2000) (quoting Pine
Run Props., Inc., 1991 WL 280719, at *10).

"The quintessential interpleader case is one in which an
insurer is faced with rival claims which exceed the amount held
in a limited fund." Id. at *14 (internal quotation omitted).

20

In such a case, interpleader allows the stakeholder to bring all potential claimants into one lawsuit so the relative merits of each claim can be determined concurrently – an efficiency that might otherwise be impossible without the nationwide service of process and injunction provisions that accompany the district court's ability to entertain suits in the nature of interpleader.  See 28 U.S.C. § 2361.  As the Supreme Court has noted,

> [w]ere an insurance company required to await
> reduction of claims to judgment, the first claimant to
> obtain such a judgment or to negotiate a settlement
> might appropriate all or a disproportionate slice of
> the fund before his fellow claimants were able to
> establish their claims.  The difficulties such a race
> to judgment pose for the insurer, and the unfairness
> which may result to some claimants, were among the
> principal evils the interpleader device was intended
> to remedy.

State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 533 (1967).
At first blush, it would seem that all of the ingredients for adverse claims are present in the Pedowitz and Skadden interpleaders:  there are multiple possible claimants, but only one can be entitled to each stake, and the plethora of suits pending in New York, Delaware, and the Southern District could theoretically spur a race to judgment amongst those claimants. However, closer inspection reveals several material differences between the "quintessential" case and the tangled web of the Pedowitz and Skadden interpleaders.

21

Although both the Pedowitz and Skadden complaints allege
that the stakeholders have received notice of objection to any
release of escrowed funds, that is not necessarily the same as
an affirmative statement of claim to those funds – in fact, no
party has demanded that a stakeholder release any of the share
proceeds that are the subject of the interpleader actions.  Arie
points out that any demand on the stakeholder is unlikely
because the funds at issue in the Skadden interpleader are
subject to an escrow agreement pursuant to which TPR and the
Trump Group[2] agreed that plaintiff Skadden, Arps would hold the
disputed Arie Share proceeds in escrow pending Delaware's
determination of beneficial ownership.  There is a substantively
identical escrow agreement at play in the Pedowitz interpleader
whereby all potential claimants to the Orly Trust Share proceeds
agreed that plaintiff Pedowitz would hold the disputed funds in
escrow pending determination of the beneficial ownership of the
shares.  Arie argues that the stakeholders can have no genuine
fear of multiple liability when all potential claimants agree
that only one of them is entitled to the res.

_____

[2] Although he is not a signatory to the escrow agreement, Arie
states that he has "never objected to Skadden holding these
funds in escrow pending a determination of his beneficial
ownership claims." (Arie Mem. at 10-11).  Moreover, while Arie
asserts a beneficial ownership in the underlying Trans-Resources
shares, in no case does he have a claim against the interpleaded
funds themselves.  Instead, Arie's numerous counterclaims seek
money damages for breach of fiduciary duties that are ancillary
to, and beyond the scope of, the Skadden interpleader.

The point is subtle but important.  All potential claimants
acknowledge that if Arie and the Orly Trust are deemed to be the
beneficial owners of the Arie Shares and Orly Trust Shares, then
the Trump Group's purchase of shares from TPR would be rescinded
and the interpleaded funds would go back to the Trump Group.
But, if the 2004 transfer of shares to Arie and the Orly Trust
is found to be invalid, then TPR had the right to sell the
shares to the Trump Group, and TPR would be entitled to the
interpleaded funds.  To be sure, the claimants and other
interested parties are suing each other in the Southern
District, the Delaware Chancery Court, and the New York Supreme
Court over the question of beneficial share ownership.  They are
not, however, suing the stakeholder plaintiffs for any part of
the Trans-Resources share proceeds.  In the Pedowitz
interpleader, the Orly Trust and the Trump Group assert cross-
claims against each other, and each seeks a declaratory judgment
of beneficial ownership of the Orly Trust Shares.  Similarly, in
the Skadden interpleader, TPR and the Trump Group assert cross-
claims against each other (and Arie), and the Trump Group seeks
a declaratory judgment that it is the beneficial owner of the
Arie Shares.

    This distinction is blurred by the fact that the
stakeholder plaintiffs also act as counsel for Dalia and the
Trump Group in other state and federal lawsuits involving the

beneficial share ownership and related tort claims.  Skadden,
Arps and Pedowitz in their capacities as law firms are defending
their clients in overlapping, multi-jurisdictional lawsuits, but
that does not equate to a risk of multiple liability for
Skadden, Arps and Pedowitz in their capacities as escrow
agents/stakeholders of the interpleaded funds.  Instead, these
stakeholder plaintiffs privately contracted with the potential
claimants in the form of escrow agreements which "specif[y] the
circumstances under which, and to whom, the escrowed funds are
to be released."  (Skadden Compl. ¶ 15; see Pedowitz Compl. ¶
13).  The condition precedent to disbursement of funds under
either of the escrow agreements is judicial determination of the
beneficial ownership of the Arie Shares and Orly Trust Shares,
an issue left unresolved by the Delaware Supreme Court.
Nevertheless, once a court enters judgment on this issue, the
escrow agents can disburse the escrowed funds to the prevailing
claimant in accordance with guidance set forth in the escrow
agreements.  In effect, the stakeholders have contracted around
any possibility of "double liability or vexatious, conflicting
claims" with respect to the interpleaded funds.

    The fact that the parties have asked three courts to
determine the question of beneficial ownership does not mean
that there is a real risk of actual, or even potential,
conflicting demands on the stakeholders.  The Court notes

24

initially that the stakeholder plaintiffs did not need to
commence the interpleader actions in order to get judicial
guidance as to who beneficially owns the Arie Shares and Orly
Trust Shares, and, as a result, who is entitled to the escrowed
funds.  Arie, Orly, Dalia, TPR, and the Trump Group are all
named as parties in the Arie & Orly Genger New York Supreme
Court action; similarly, Arie, TPR, and the Trump Group are
named in the TR Investors Delaware Chancery action, and Dalia on
behalf of the Orly Trust, named TPR and the Trump Group in the
Dalia Genger Delaware Chancery action.  New York and Delaware,
if personal jurisdiction over Arie and Orly can be obtained,
have all the contenders for beneficial ownership of the Arie
Shares and Orly Trust Shares present and could adjudicate their
respective rights to the Trans-Resources shares in a single
action.  "Interpleader is designed to insulate a stakeholder
from contradictory judgments and multiple liability and . . .
relieve a stakeholder from having to determine which claim among
several is meritorious."  Reserve Int'l Liquidity Fund, Ltd. v.
Caxton Int'l Ltd., 721 F. Supp. 2d 253, 258 (S.D.N.Y. 2010)
(internal quotations omitted).  However, once, for example, the
New York Supreme Court reaches the merits of beneficial
ownership of the Arie Shares, Orly Trust Shares, or both, that
judgment will have preclusive effect in any other court where
the parties have raised the matter – be it through res judicata

or collateral estoppel.  In other words, only one court can
determine the beneficial ownership of the Arie Shares and/or the
Orly Trust Shares, and, once that has occurred, the respective
stakeholder plaintiffs will know which claimant is entitled to
the interpleaded funds.  There is no risk of one claimant to the
Arie Shares prevailing in Delaware while another claimant to
those shares prevails in New York, and therefore, no risk that
the stakeholders will have to fend off adverse claims to the
interpleaded funds.  As the stakeholders have not demonstrated
that the interpleaded funds are subject to actual or even
potential adverse claims, the <u>Pedowitz</u> and <u>Skadden</u> interpleader
actions do not meet the statutory requirements for subject
matter jurisdiction under § 1335.

## 2.  § 1332 Diversity Jurisdiction

Despite this deficiency, the Court could convert the
statutory interpleader actions to rule interpleader actions
pursuant to Rule 22 of the Federal Rules of Civil Procedure.  In
order to do so, there must be an independent basis for subject
matter jurisdiction.  As the Court cannot discern any federal
questions presented in the complaints, the only option is
diversity jurisdiction under 28 U.S.C. § 1332 – that is,
diversity of citizenship between the plaintiff and defendants
and an amount in controversy exceeding $75,000.  See <u>Truck-A-
Tune, Inc.</u>, 23 F.3d at 62 (affirming district court's sua sponte

conversion of statutory interpleader to rule interpleader action "[b]ecause the stakeholder's citizenship is diverse to that of all the defendants, and the amount in controversy exceeds [$75,000], the Court has subject matter jurisdiction under the diversity statute"). For the purposes of determining diversity, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

With respect to the Pedowitz action, the complaint alleges that plaintiff Pedowitz is a limited liability partnership organized under the laws of the State of New York, with its principal place of business in New York. (Pedowitz Compl. ¶ 1). However, Defendant TPR is alleged to be a Delaware corporation with its principal place of business in the State of New York, (id. ¶ 2), and Defendants Dalia and Orly are alleged to reside in the City and State of New York. (Id. ¶¶ 7-8). Similarly, the Skadden complaint alleges that plaintiff Skadden, Arps is a New York limited liability partnership with its principal place of business in New York City, (Skadden Compl. ¶ 5), but Defendant TPR is alleged to be a Delaware corporation with its principal place of business in New York City. (Id. ¶ 6). In the absence of complete diversity between the stakeholder

plaintiffs and the claimants, the Court cannot found its subject matter jurisdiction on § 1332.

As the Pedowitz and Skadden complaints do not establish a basis for jurisdiction in § 1335 or § 1332, the interpleader actions must be dismissed for lack of subject matter jurisdiction. Additionally, absent the interpleader actions, there are no cases for consolidation, so TPR's motions to consolidate Pedowitz, Skadden, and Glenclova (Pedowitz Docket No. 37; Skadden Docket No. 11; Glenclova Docket No. 122) are denied as moot.

### 3.  Abstention

Although the Court finds an absence of subject matter jurisdiction over the interpleader actions, it will consider additional grounds for dismissal in the alternative. Indeed, the existence of subject matter jurisdiction does not necessarily demand its exercise. Arie and Orly argue that the Court should abstain from exercising jurisdiction over the Pedowitz and Skadden interpleader actions in favor of parallel New York state court proceedings.

Ordinarily, when confronted with a parallel state action, federal courts have a "virtually unflagging obligation" to exercise jurisdiction, and should only abdicate in favor of state courts in "exceptional circumstances." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813,

817 (1976).  However, in Wilton v. Seven Falls Co., 515 U.S.
277, 286 (1995), the Supreme Court approved a "standard vesting
district courts with greater discretion in declaratory judgment
actions than that permitted under the 'exceptional
circumstances' test of Colorado River."  Under Wilton, the
district court may decline to hear declaratory judgment suits in
favor of pending state actions because "the normal principle
that federal courts should adjudicate claims within their
jurisdiction yields to considerations of practicality and wise
judicial administration."  Id. at 288.  Thus, the Court must
first determine which of the two standards governs abstention in
a federal statutory interpleader action.

     The Third Circuit has extended Wilton's discretionary
standard beyond the declaratory judgment context, holding that
"a motion to dismiss a federal statutory interpleader action
during the pendency of a parallel state court proceeding is
addressed to the sound discretion of the district court."
NYLife Distribs., Inc. v. Adherence Grp., Inc., 72 F.3d 371, 372
(3d Cir. 1995).  Factors informing the Third Circuit's holding
included:  the fact that district courts in that Circuit "have
traditionally assumed that they possess broad equitable
discretion to decline jurisdiction over a statutory interpleader
lawsuit where in their view there is a pending state proceeding
that obviates the need for the federal action"; the fact that

interpleader is a suit in equity, which inherently vests the court with broader discretion; nothing in the language of § 1335 evidenced Congress' intent to divest the district court of "traditional equitable discretion in deciding matters of equitable relief." Id. at 379-80.

Although the Second Circuit has not yet weighed in on the standard governing a district court's decision to abstain from hearing statutory interpleader actions, its prior precedents are much in line with the Third Circuit's reasoning in NYLife. First, the Second Circuit has held that "a district court can abstain from the declaratory relief claims included in an interpleader action as a matter of its discretion" pursuant to Wilton. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp, 108 F.3d 17, 20 (2d Cir. 1997) (emphasis in original). Additionally, like the Third Circuit, the Second Circuit has thrice confirmed that "the availability of interpleader jurisdiction does not require its exercise, and the district court acts within its discretion to decline adjudicating issues raised in an interpleader action that can be 'fairly adjudicated' in state court." Id. at 21; see Truck-A-Tune, Inc., 23 F.3d at 63 ("Interpleader is an equitable proceeding, and the District Court acted well within its discretion in determining that the equities did not warrant further federal court adjudication." (internal citations omitted)); Am.

30

_Airlines, Inc. v. Block_, 905 F.2d 12, 14 (2d Cir. 1990) (per curiam) ("[I]t is well recognized that interpleader is an equitable remedy, and a federal court may abstain from deciding an interpleader action if another action could adequately redress the threat that the stakeholder might be held doubly liable."); _see also Commerce & Indus. Ins. Co. v. Cablewave Ltd._, 412 F. Supp. 204, 207 (S.D.N.Y. 1976) (as a matter of discretion, "interpleader relief may be denied if there is an adequate remedy elsewhere"). The Second Circuit's previous affirmations of a district court's general discretion in resolving interpleader actions persuades this Court that the question of abstention is similarly entrusted to the district court's sound discretion.

Application of the _Wilton_ standard is particularly apt in light of the unique circumstances facing the Court. Although the interpleader complaints do not explicitly invoke the Declaratory Judgment Act, they each seek a determination of which of the defendants is entitled to the escrowed funds, relief that is declaratory in nature. The Trump Group's cross-claims, on the other hand, specifically request declaratory judgments that it is the record and beneficial owner of the Arie Shares and Orly Trust Shares. However, due to the mutually exclusive nature of the interpleader claimants' claims, the interpleader actions and the cross-claims converge into one ball

31

of wax – that is to say, the legal issues to be decided
(beneficial ownership of the Arie Shares and Orly Trust Shares)
and the relief to be granted are identical.  Under National
Union Fire Insurance, there is no question that the Court has
the discretion to abstain from deciding the Trump Group's
declaratory judgment cross-claims.  To apply Colorado River's
"exceptional circumstances" standard to the abstention analysis
for the interpleader actions, but apply a discretionary standard
with respect to the cross-claims would reach an absurd result.

Under Wilton, the overarching principle guiding the
district court's analysis is "whether the questions in
controversy between the parties to the federal suit . . . can
better be settled in the proceeding pending in the state court."
515 U.S. at 282.  Although the Wilton Court did not lay out a
bright-line test for abstention in favor of state court
litigation, it did endorse the non-exclusive list of factors set
forth in Brillhart v. Excess Ins. Co., 316 U.S. 491 (1942).
Relevant considerations under Brillhart and Wilton include:

> (1) the scope of the pending state proceeding and the
> nature of the defenses available there; (2) whether
> the claims of all parties in interest can
> satisfactorily be adjudicated in that proceeding; (3)
> whether the necessary parties have been joined; and
> (4) whether such parties are amenable to process in
> that proceeding; (5) avoiding duplicative proceedings;
> (6) avoiding forum shopping; (7) the relative
> convenience of the fora; (8) the order of filing; and
> (9) choice of law.

TIG Ins. Co. v. Fairchild Corp., No. 07 Civ. 8250, 2008 WL 2198087, at *2 (S.D.N.Y. May 27, 2008) (internal alterations omitted).

All of these factors weigh heavily in favor of abstention. The question of beneficial ownership of the Arie Shares and Orly Trust Shares at the heart of the interpleader actions is also the focus of the Delaware Chancery Court actions, and is one among many issues before the New York Supreme Court. In that sense, the interpleader actions are parallel to the New York and Delaware Chancery proceedings. See Dore v. Wormley, 690 F. Supp. 2d 176, 191 (S.D.N.Y. 2010) ("Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum."). Although parallel, the interpleaders and the New York Supreme Court suits are not identical as the state cases encompass a number of tort claims not present in the interpleaders. Nevertheless, that the interpleader action "is merely a subset, rather than exact duplicate, of the state court proceeding does not diminish [their] concurrent nature." TIG Ins. Co., 2008 WL 2198087, at *3. Should the parties decide to cease their incessant scheming so their disputes can finally be resolved, either of the state courts is well-equipped to do so, as each will be guided by the final judgment entered in Delaware. Certainly, the New York Supreme Court can adjudicate all of the respective rights of the

33

claimants to the Arie Shares and Orly Trust Shares, as the interpleader complaints present no issues of federal law, and all the parties present in the interpleader actions are also present in New York.  The Delaware Chancery Court, however, may not be able to reach the merits of beneficial ownership because the Dalia Genger action has essentially been stayed by the New York Supreme Court and because there is some question as to how the Delaware court can obtain personal jurisdiction over Arie absent his consent.

New York, Delaware, and the Southern District of New York are equally convenient fora for these New York, New Jersey, Delaware, Florida, and Cayman Islands parties.  The Pedowitz and Skadden interpleaders are among the last-filed cases, initiated more than a year after the Arie & Orly Genger action.  Only one case has substantially progressed.  The Orly Genger New York Supreme Court action is in the midst of discovery, while the remaining state and federal actions are still mired in injunction motions and motions to dismiss.  The escrow agreements, as well as the October 29, 2004 letter agreement memorializing Arie's transfer of shares to himself, the Sagi Trust, and the Orly Trust, are governed by New York law.

The remaining two Wilton factors are of particular significance.  Clearly, there is a pressing need to stop the rank forum shopping in which each and every party to these

34

actions is engaged, as well as the duplicative litigation that
has arisen as a result.  There are too many courts wasting too
much of their valuable time on the mountain of motions and
sniping missives these parties cannot restrain themselves from
filing and sending.  Some of the parties would have the Court
save them from themselves by acting as a traffic cop, using the
interpleader actions, and the attendant interpleader injunction
power under 28 U.S.C. § 2361, to direct them to a single forum.
However, two motions filed in the interpleader actions seeking
an order enjoining pending state and federal cases betray the
interpleader actions for what they truly are – gratuitous
litigation filed solely to strong-arm adversaries into a
particular forum of choice.

The Pedowitz interpleader was filed on August 11, 2011 by
the Pedowitz firm, which acts as Dalia's counsel as well as the
escrow agent for the Orly Trust Share proceeds.  Less than two
months later, on October 4, 2011, Dalia, as trustee of the Orly
Trust, filed the Dalia Genger action in Delaware Chancery Court
seeking a declaratory judgment that the Orly Trust is the
beneficial owner of the Orly Trust Shares.  Then, on December
14, 2011, the Pedowitz firm, acting on Dalia's behalf, filed a
motion to enjoin all New York Supreme Court litigation, the
federal Glenclova case, and her own Dalia Genger Delaware
Chancery Court action, asking this Court to determine the

beneficial ownership of the Orly Trust Shares in the <u>Pedowitz</u>
interpleader.  In other words, the Pedowitz firm, acting on
behalf of an interpleader defendant, filed a motion against
itself, as the interpleader plaintiff, and by that motion, Dalia
asks the Court to use the interpleader injunction power to
enjoin her from prosecuting her own case in Delaware.

The Trump Group's motion is even more suspect.  On August
9, 2011, Arie moved in New York Supreme Court to enjoin any
transfer of the $5,928,994 Arie Share proceeds.  Before the New
York court had a chance to rule on the preliminary injunction
motion, on November 7, 2011, the Skadden, Arps firm initiated
the <u>Skadden</u> interpleader by depositing the $5,928,994 with the
Clerk of Court of the Southern District of New York.  Then, on
December 14, 2011, Skadden, Arps, acting on behalf of its
clients, the Trump Group, filed a motion for a preliminary
injunction enjoining New York Supreme Court litigation and for a
stay of federal litigation, so that the Delaware Chancery Court
can determine the beneficial ownership of the Arie Shares;
identical motions were filed in the <u>Pedowitz</u> interpleader and
the <u>Glenclova</u> case, which, if granted, would put the question of
beneficial ownership of the Orly Trust Shares to the Delaware
Chancery Court as well.

Thus, Skadden, Arps, acting on behalf of its clients, the
Trump Group, filed a motion against itself to stay its own

lawsuit. This is a blatant misuse of the interpleader statute, which specifically authorizes the injunction of state court actions so that the <u>district court</u> can hear and determine the case. <u>See</u> 28 U.S.C. § 2361 ("Such district court shall hear and determine the case, and may discharge the plaintiff from further liability, make the injunction permanent, and make all appropriate orders to enforce its judgment."). The injunction power was given to the district court to aid its own jurisdiction, not that of a state court hearing a parallel action. Although it seeks a strange result, Dalia's motion at least advocates a legitimate use of § 2361 injunction power. The Trump Group, on the other hand, is attempting to use funds deposited into federal court as a means of circumventing the Anti-Injunction Act and getting the Delaware Chancery Court to decide the beneficial ownership of the Arie Shares and Orly Trust Shares. This maneuvering violates the spirit, if not the letter, of the federal interpleader statute.

Moreover, the § 2361 interpleader injunction power extends only so far as enjoining prosecution of lawsuits "affecting the property, instrument or obligation involved in the interpleader action." Both Dalia and the Trump Group seek to enjoin at least one New York Supreme Court case that does not directly address rights in the interpleaded funds. Namely, in the <u>Orly Genger</u> New York Supreme Court case, Orly is suing her mother, brother,

37

and TPR over TPR shares – not the Arie Share or Orly Trust
Shares that are the subject of the interpleader actions.  Thus,
the Court could not enjoin the <u>Orly Genger</u> case from proceeding,
despite the fact that the issues in that case are related to,
and may inform, resolution of the beneficial ownership of the
Orly Trust Shares.

It seems the only reason the escrowed funds were deposited
with the federal court, more than a year after the escrow
agreements were signed and no less than six months after the
Trump Group exercised its option to purchase the Orly Trust
Shares and Arie Shares, is because the interpleader statute
confers on the federal court injunction power it would not
otherwise have.  In the end, the stakeholders invoke the
interpleader remedy for improper purposes.  Interpleader "cannot
be used to solve all the vexing problems of multiparty
litigation . . . [as it] was never intended to perform such a
function, to be an all-purpose 'bill of peace.'"  <u>State Farm</u>
<u>Fire & Cas. Co.</u>, 386 U.S. at 535.  The interpleader actions have
only multiplied the amount of pending litigation, and, even with
the § 2361 injunction power, it is impossible to consolidate all
the parties' claims in federal court.  In this Court's view, the
only way to put a stop to, or at least lessen, the forum
shopping and jurisdictional sparring is for this Court to bow
out of the race, abstain from entertaining these sham

interpleader actions as a matter of equitable discretion, and
let the state courts (likely the New York Supreme Court) proceed
to the merits.

### 4.   § 2361 Interpleader Injunction

As mentioned earlier, only one court can pass on the
question of beneficial ownership of the Arie Shares and Orly
Trust Shares.  The interpleader actions were filed in an attempt
to force that question on this Court.  Convinced, for whatever
reason, that one court or another is best suited to the task,
pursuant to 28 U.S.C. § 2361, Dalia moves to enjoin (Pedowitz
Docket No. 40), TPR moves to enjoin (Pedowitz Docket No. 37;
Skadden Docket No. 11; Glenclova Docket No. 122), and the Trump
Group moves for a preliminary injunction and stay (Pedowitz
Docket No. 48; Skadden Docket No. 14; Glenclova Docket No. 133)
enjoining one or more of the pending state and federal cases
from proceeding.

Section 2361 provides that:

> In any civil action of interpleader or in the nature
> of interpleader under section 1335 of this title, a
> district court may issue its process for all claimants
> and enter its order restraining them from instituting
> or prosecuting any proceeding in any State or United
> States court affecting the property, instrument or
> obligation involved in the interpleader action until
> further order of the court. . . .  Such district court
> shall hear and determine the case, and may discharge
> the plaintiff from further liability, make the
> injunction permanent, and make all appropriate orders
> to enforce its judgment.

Dismissal of the <u>Pedowitz</u> and <u>Skadden</u> interpleader actions renders the injunction relief requested in these motions moot as the injunction power is not available to the Court.

## B. <u>Glenclova</u>

The <u>Glenclova</u> case was initially filed against TPR and Trans-Resources seeking a declaration that the 2004 transfers of shares to Arie, the Sagi Trust, and the Orly Trust were void (an issue the Delaware courts have already resolved) and, as a result, specific performance of Glenclova's share purchase rights under the Stockholders Agreement.  As the Trump Group obtained the invalidly transferred shares pursuant to the 2008 side agreements with TPR, the initial <u>Glenclova</u> complaint is essentially moot.  However, TPR later filed a third party complaint against Arie, who in turn filed counterclaims against numerous other parties.  Thus, the <u>Glenclova</u> controversy has shifted to third-party litigation of claims identical to the claims being litigated in New York Supreme Court.

There are three jurisdictional motions pending in the <u>Glenclova</u> action:  (1) TPR's motion to enjoin (<u>Glenclova</u> Docket No. 122); (2) the Trump Group's motion for a preliminary injunction and stay (<u>Glenclova</u> Docket No. 133); and (3) Arie's motion to dismiss or stay (<u>Glenclova</u> Docket No. 124).  For the reasons previously articulated, dismissal of the interpleader actions prevents the Court from entering injunctions pursuant to

40

28 U.S.C. § 2361, so TPR's motion is denied and the Trump Group's motion is denied in part as moot.  Arie requests that the Court abstain from exercising jurisdiction in <u>Glenclova</u>.

### 1.  Domestic Relations Exception

Initially, the Court notes that Arie is asking the Court to refrain from deciding his own counterclaims, filed after he chose to make a motion to intervene in the <u>Glenclova</u> action.  Like the stakeholders' motions in <u>Pedowitz</u> and <u>Skadden</u>, this gambit is yet another party's attempt to shift this litigation to a forum of choice.

Arie argues that this Court should abstain from exercising diversity jurisdiction in the <u>Glenclova</u> matter under the domestic relations exception to federal subject matter jurisdiction.  The domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  <u>Ankenbrandt v. Richards</u>, 504 U.S. 689, 703 (1992).  While the domestic relations exception itself is limited to the cases involving the issuance of such decrees, the Second Circuit has recognized that a "federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts" in light of the "the greater interest and expertise of state courts in this field."  <u>Am.</u>

41

Airlines, 905 F.2d at 14.  Although the phrase "on the verge" is
difficult to define, courts have abstained, for example, where
plaintiff's claims were based on a "purported violation of a New
York state court Order for Temporary Support and a New York
state court Final Judgment of Divorce, both of which . . .
distribute marital property and provide for child custody
arrangements and child support."  Hamilton v. Hamilton-Grinols,
363 F. App'x 767, 769 (2d Cir. 2010); see Ferlita v. Ferlita,
No. 09 Civ. 3769, 2011 WL 6288408, at *3 (S.D.N.Y. Dec. 14,
2011) (abstaining under domestic relations exception where "[a]t
its core, Plaintiff's present action against Defendant Ferlita
seeks to enforce the terms of the Divorce Settlement, an
agreement which was entered into as part of the dissolution of
Plaintiff and Defendant Ferlita's marriage"); Ranney v. Bauza,
No. 10 Civ. 7519, 2011 WL 4056896, at *5 (S.D.N.Y. Aug. 31,
2011) (abstaining where "all of the so-called tort claims in
this action are inherently intertwined with the marital
settlement agreement").

By way of background, Arie and Dalia's judgment of divorce
incorporates by reference their October 30, 2004 Stipulation of
Settlement, but provides that the stipulation "shall not be
merged into this Judgment."  (Stip. of Settlement, Arie
Counterclaims, Ex. A).  Pursuant to the Stipulation of
Settlement, Arie relinquished his controlling interest in TPR,

which held 3,000 Trans-Resources shares.  Arie and Dalia agreed
that those Trans-Resources shares would be distributed among
Arie, the Sagi Trust, and the Orly Trust.  (Id., art. II, ¶¶
2(a)(ii), 9).  The Stipulation provides that "[e]xcept for the
consent of TPR, [Arie] further represents and warrants that no
consent, approval or similar action of any person is required in
connection with the transfer of [Trans-Resources shares] as
contemplated hereby," (id., art. II, ¶ 9), a representation the
Delaware Chancery Court found to be false.  TR Investors, 2010
WL 2901704, at *10.  The 2004 transfer of shares initiated by
Arie and Dalia's divorce Stipulation of Settlement caused the
breach of the 2001 Stockholders Agreement between Glenclova,
Investors, Trans-Resources, and TPR, the original issue in the
Glenclova complaint.  Thus, it is true that the maelstrom of
litigation in New York, Delaware, and the Southern District all
stems from Arie and Dalia's distribution of marital assets.
That is not to say, however, that the resulting litigation is
"on the verge" of being matrimonial in nature.

Certainly the Glenclova complaint itself presents no
domestic relations issues, as plaintiff's specific performance
claim against Trans-Resources and TPR cannot be considered a
matrimonial dispute, and adjudication of the respective rights
of these corporate parties in no way requires reformation of
Arie and Dalia's divorce settlement.  But, as previously

43

explained, the Trump Group essentially resolved its own specific
performance claim by privately purchasing the disputed Trans-
Resources shares.  It is Arie who has injected domestic
relations into this lawsuit by filing third-party counterclaims
against Sagi, Dalia, the Sagi Trust, Rochelle Fang, the trustee
of the Sagi Trust, the Trump Group, TPR, and Trans-Resources.

    Interestingly, none of Arie's counterclaims are directed
solely at his ex-wife, and the majority of the counterclaims do
not name Dalia at all.  Instead, Arie seeks a declaratory
judgment against all thirteen counterclaim defendants that he is
entitled to reform the terms of his divorce Stipulation of
Settlement, despite the fact that twelve of those counterclaim
defendants are not parties to the settlement agreement.  This is
curious in two respects.  First, instead of framing the claim as
one for reformation of a contract between two former spouses,
Arie seeks a declaratory judgment that would, for all intents
and purposes, declare the rights of every party even remotely
involved in the New York, Delaware, and Southern District suits
to the disputed Trans-Resources shares.  Second, even though
Arie is the party who made false representations in the
Stipulation of Settlement, his reformation claim does not seek
to right that wrong.  Instead, he wants to change the terms of
the agreement in a manner designed to undo the Delaware Chancery
Court's finding of liability against him, thereby allowing him

to avoid the consequences of his own breach of the 2001 Stockholders Agreement – the Trump Group's right to purchase those invalidly transferred shares.  These facts demonstrate to the Court that Arie's counterclaims, at their core, concern the breach of the 2001 Stockholders Agreement, not the division of marital property, and therefore, the domestic relations exception to federal jurisdiction does not apply.

Moreover, even if the domestic relations exception did apply to the reformation counterclaim, that exception would in no case compel the Court to abstain from hearing the remaining counterclaims, particularly the claims for breach of fiduciary duty against Sagi and others (premised on Sagi's implementation of the 2008 side letter agreements on behalf of TPR), and claims for breach of contract against TPR and the Sagi Trust (premised on contracts other than the divorce stipulation of settlement).[3]

## 2.   Colorado River Abstention

Alternatively, Arie asks the Court to abstain from exercising jurisdiction over the Glenclova action under Colorado River.  The district court considers six so-called Colorado River factors in deciding whether exceptional circumstances

---

[3] This analysis applies with equal force to Orly's request that the Court abstain from exercising jurisdiction over the Pedowitz interpleader on the basis of the domestic relations exception. Reformation of Arie and Dalia's divorce settlement is not necessary or even relevant to the various claimants' rights to the interpleaded funds.

warrant dismissal of a pending action in favor of state court litigation, namely:

> (1) whether the controversy involves a res over which one of the courts has assumed jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed, and whether proceedings have advanced more in one forum than in the other; (5) whether federal law provides the rule of decision; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights.

Woodford v. Cmty. Action Agency of Greene Cnty., Inc., 239 F.3d 517, 522 (2d Cir. 2001) (internal citations omitted). "[T]he decision whether to dismiss a federal action because of parallel state-court litigation does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp., 460 U.S. 1, 16 (1983).

Unlike the discretionary standard for abstention applied in the interpleader context, Colorado River abstention is permissible only in the rarest of cases. Most of the Colorado River factors do not demonstrate circumstances so exceptional as to overcome the presumption in favor of federal jurisdiction. As the interpleader actions have been dismissed, this Court no longer retains jurisdiction over the share proceeds at issue. Notwithstanding that dismissal, the Court notes that it

46

previously assumed jurisdiction over only part of the proceeds
of the sale of the Arie Shares.  The remaining $1.5 million is
held in escrow by Skadden, Arps at the direction of the New York
Supreme Court, but it has not been deposited with any state
court.  As discussed above, the federal and state courts are
equally convenient to the parties.  Glenclova is technically the
first-filed case, but the real controversy in the Glenclova case
now revolves around third-party litigation Arie initiated here a
few weeks after filing the Arie & Orly Genger New York Supreme
Court case.  Moreover, "priority should not be measured
exclusively by which complaint was filed first, but rather in
terms of how much progress has been made in the two actions."
Moses H. Cone, 460 U.S. at 21.  To the extent any of the federal
and state cases, other than the Orly Genger action, have
progressed at all, they are still in the early motion to dismiss
stage.  The question of beneficial ownership of the Arie Shares
and Orly Trust Shares is likely governed by New York law, but
the federal court sitting in New York (and even the Delaware
Chancery Court) applies New York state law so often that there
is no strong reason to defer to the state courts, particularly
since there are no unique issues of state law raised.  Finally,
the fact that the state courts can adequately protect the
parties' interests "is not enough to justify the district

47

court's deference to the state action." Bethlehem Contracting

Co. v. Lehrer/McGovern, Inc., 800 F.2d 325, 328 (2d Cir. 1986).

As with the interpleader actions, avoidance of piecemeal

litigation is the most important factor in the Court's

abstention analysis.  The Second Circuit has explained that

> the primary context in which we have affirmed Colorado
> River abstention in order to avoid piecemeal
> adjudication has involved lawsuits that posed a risk
> of inconsistent outcomes not preventable by principles
> of res judicata and collateral estoppel.  The classic
> example arises where all of the potentially liable
> defendants are parties in one lawsuit, but in the
> other lawsuit, one defendant seeks a declaration of
> nonliability and the other potentially liable
> defendants are not parties.

Woodford, 239 F.3d at 524.  As noted earlier, once a court

obtains personal jurisdiction over all contenders for beneficial

ownership of the Arie Shares or the Orly Trust Shares, its

judgment should be protected by res judicata and/or collateral

estoppel; this eliminates any risk of inconsistent judgments

with respect to a single group of shares.  The Glenclova case,

however, presents a different risk.  The Arie & Orly Genger New

York claims are identical to Arie's counterclaims in Glenclova

with one notable exception - neither Orly nor the Orly Trust are

parties to the Glenclova action, and, as the Pedowitz

interpleader has been dismissed, they are not before this Court

at all.  Therefore, if this Court were to determine beneficial

ownership of the Arie Shares in Glenclova, there is a

48

possibility that its findings could conflict with a state
court's findings as to beneficial ownership of the Orly Trust
Shares.

The need to prevent piecemeal litigation is compelling.
Against this factor the Court must balance five factors that
are, at best, neutral.  But the neutrality of a Colorado River
factor "is a basis for retaining jurisdiction, not for yielding
it."  Woodford, 239 F.3d at 522.  While the circumstances
presented in Glenclova and the parallel state cases are without
a doubt complicated, they are not so exceptional as to warrant
the extraordinary step of abstention from the exercise of
federal jurisdiction under Colorado River.

It is said that a foolish consistency is the hobgoblin of
little minds,[4] but the Court cannot ignore its stated preference
that the question of beneficial ownership of the Arie Shares and
Orly Trust Shares be decided in a state court.  Although the
Court cannot relinquish jurisdiction over Glenclova, it has no
interest in determining only half of the host of claims raised
therein.  The Trump Group offers a solution in the form of a
temporary stay of federal proceedings in favor of state court
proceedings wherever personal jurisdiction over all of the
parties can be obtained.  See Names for Dames v. Gimbel, No. 88
Civ. 3692, 1989 WL 82417, at *3 (S.D.N.Y. July 19, 1989)

---

[4] Ralph Waldo Emerson.

49

(granting stay of federal case in favor of New Jersey
litigation, but explicitly not declining to exercise
jurisdiction under Colorado River).  The Court has already
chosen this path once, staying the Glenclova matter during the
pendency of the Delaware Chancery and Supreme Court proceedings.
This compromise upholds the Court's "unflagging obligation" to
exercise diversity jurisdiction, maintains the availability of
relief in federal court for plaintiff Glenclova should its
specific performance claim revive, and allows a court with
jurisdiction over all relevant parties to decide the beneficial
ownership issues at the heart of this case, along with the
countless related tort and contract claims.  The Court takes no
position on the question of forum, but, in light of the stay of
the Dalia Genger action, and in light of the difficulty the
Delaware Chancery Court may have in obtaining personal
jurisdiction over Arie and Orly, strongly suggests that the
parties agree to litigate their claims in the New York Supreme
Court.

### III.    Conclusion

     As to Pedowitz & Meister LLP v. TPR Inv. Assocs., Inc., et
al., No. 11 Civ. 5602 (JFK):

- Orly's Motion to Dismiss or Stay (Docket No. 8) is granted
  in part.

- TPR's Motion to Enjoin and Consolidate (Docket No. 37) is denied.

- Dalia's Motion to Enjoin (Docket No. 40) is denied.

- The Trump Group's Motion for a Preliminary Injunction and Stay (Docket No. 48) is denied.

The Pedowitz interpleader is dismissed for lack of subject matter jurisdiction, or, pursuant to the Court's discretion to abstain.  Therefore, the Clerk of Court is directed to close the motions at Docket Nos. 8, 37, 40, and 48, and to close this case.

As to Skadden, Arps, Slate, Meagher & Flom LLP v. TPR Inv. Assocs., Inc., et al., No. 11 Civ. 7923 (JFK):

- TPR's Motion to Enjoin and Consolidate (Docket No. 11) is denied.

- The Trump Group's Motion for a Preliminary Injunction and Stay (Docket No. 14) is denied.

- Arie's Motion to Dismiss or Stay (Docket No. 25) is granted in part.

The Skadden interpleader is dismissed for lack of subject matter jurisdiction, or, pursuant to the Court's discretion to abstain. Therefore, the Clerk of Court is directed to close the motions at Docket Nos. 11, 14, and 25, and to close this case.

As to <u>Glenclova Inv. Co. v. Trans-Resources, Inc.</u>, No. 08
Civ. 7140 (JFK):

- TPR's Motion to Enjoin and Consolidate (Docket No. 122) is
  denied.

- Arie's Motion to Dismiss or Stay (Docket No. 124) is
  denied.

- The Trump Group's Motion for a Preliminary Injunction and
  Stay (Docket No. 133) is denied in part, granted in part.

The <u>Glenclova</u> action is stayed pending resolution of the
question of beneficial ownership of the Arie Shares and Orly
Trust Shares in the state courts.  The Clerk of Court is
directed to close the motions at Docket Nos. 122, 124, and 133,
and stay the remaining proceedings.

**SO ORDERED.**

Dated:    New York, New York
          June 14, 2012

                                    John F. Keenan
                          United States District Judge

52