UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GLENCLOVA INVESTMENT CO.,<br><br>    Plaintiff,<br><br>v.<br><br>TRANS-RESOURCES, INC. and TPR INVESTMENT ASSOCIATES, INC.,<br><br>    Defendants. | Case No. 08 Civ. 7140 (JFK)<br><br>**ARIE GENGER'S MEMORANDUM OF LAW IN OPPOSITION TO THE MOTION OF TPR AND SAGI GENGER TO LIFT STAY** |
| TPR INVESTMENT ASSOCIATES, INC.,<br><br>    Third Party Plaintiff,<br><br>v.<br><br>ARIE GENGER,<br><br>    Intervener/Defendant, Third Party Defendant, and Counterclaim Plaintiff. | |
| ARIE GENGER,<br><br>    Counterclaim Plaintiff,<br><br>-against-<br><br>GLENCLOVA INVESTMENT CO., and TPR INVESTMENT ASSOCIATES, INC.,<br><br>    Counterclaim Defendants,<br><br>-and-<br><br>SAGI GENGER, DALIA GENGER, THE SAGI GENGER 1993 TRUST, ROCHELLE FANG, individually and as Trustee of THE SAGI GENGER 1993 TRUST, TR | |

5538425.4

INVESTORS, LLC, NEW TR EQUITY I, LLC, NEW TR EQUITY II, LLC, JULES TRUMP, EDDIE TRUMP, MARK HIRSCH and TRANS-RESOURCES, INC.

          Additional Counterclaim Defendants.

# TABLE OF CONTENTS

I.  This Court's June 14, 2012 Order Does Not Mandate Lifting The Stay ............................. 2

II. Arie Is Actively Litigating His Claims For Unjust Enrichment And Breach of Fiduciary Duty In The State Court Action .......................................................................... 4

III. The June 14, 2012 Stay Order Does Not Prejudice TPR or Sagi ........................................ 9

Third Party Defendant Arie Genger ("Arie"), through his counsel Mitchell Silberberg & Knupp LLP, respectfully submits this memorandum of law in opposition to the motion of Third Party Plaintiff TPR Investment Associates, Inc. ("TPR") and Counterclaim Defendant Sagi Genger ("Sagi"), seeking to lift the stay of proceedings instituted by the Court in its June 14, 2012 Opinion and Order (Doc. 164) (the "June 14, 2012 Order").[1]

## Preliminary Statement

TPR and Sagi provide three equally unavailing arguments in support of their request to reopen this proceeding. First, TPR and Sagi claim that they are entitled to have the Court's stay lifted pursuant to the explicit terms of the Court's June 14, 2012 Order. Second, TPR and Sagi imply that the concurrent litigation currently proceeding before the Supreme Court for the State of New York (the "State Court Action") is largely completed, and that they need to reopen this action in order to pursue their claims. Third, TPR and Sagi argue that they will suffer prejudice if the Court's stay is not lifted, because they would prefer to have this Court provide an interpretation of a 2008 settlement agreement between TPR and the Trump Group.[2] But these arguments have no substance.

---

[1] In addition to addressing various motions to dismiss, to stay this action, or to enjoin other actions filed by the parties to this litigation, the June 14, 2012 Order also dismissed two related "sham" interpleader actions filed by counsel for the Trump Group and Dalia Genger. June 14, 2012 Order at pp. 38-39. The Court's familiarity with the factual and procedural background of this matter are presumed, and are largely set forth in the June 14, 2012 Order itself.

[2] Unless otherwise indicated, this memorandum utilizes the same defined terms as are set forth in the June 14, 2012 Order.

5538425.4

I.      **This Court's June 14, 2012 Order Does Not Mandate Lifting The Stay**

This Court's June 14, 2012 Order, among other things, stayed this action – which has since been marked closed – subject to being reopened, if necessary, following a determination of beneficial ownership of the Arie and Orly Trust Shares by either the Delaware or New York state courts. This Court's comprehensive decision and Order is absolutely clear that it maintained jurisdiction to lift the stay at the request of Glenclova, one of the Trump Group parties, but only if that would be necessary for the Trump Group to reopen this case to seek specific performance of the underlying 2001 TRI Stockholders Agreement based on any decision in either New York or Delaware determining that the Trump Group was not entitled to obtain title to the Arie and Orly Trust TRI Shares, *in specie*. Thus, the limited, specific basis for maintaining jurisdiction over this case was to "maintain[] the availability of relief in federal court **for plaintiff Glenclova** should its specific performance claim revive . . . ." June 14, 2012 Order at p. 12 (emphasis added).

But the Trump Group's *qua* Glenclova's declaratory judgment action that started this case in 2008 seeking a declaration that was entitled to purchase the Arie and Orly Trust TRI Shares under the 2001 TRI Stockholders Agreement is now undeniably moot because Arie and Orly have recently settled all of their claims with the Trump Group relating to the actual ownership of the Arie and Orly Trust TRI shares. It is now the fact that these TRI shares, *in specie*, have already been transferred to the Trump Group by TPR, and Arie and the Trump Group settled all claims between them in this action, the New York action and the Delaware action relating to the ownership of these shares Accordingly, an order of voluntarily dismissal

2

5538425.4

was entered by the Court on June 20, 2013 as to all claims between Arie and the Trump Group in this case (Doc. 168).

Clearly, Glenclova has not requested that the Court reopen this action; rather, such relief is now being sought by TPR and Sagi to pursue new and different claims. There is no longer any issue as to the actual current legal and beneficial ownership of any TRI shares themselves. They belong to the Trump Group. In fact, even before this Arie/Orly/Trump group Settlement, Glenclova and TPR have repeatedly claimed that the 2001 TRI Stockholder declaratory action claims brought in this action more than 5 years ago were abandoned shortly after this case was brought, when TPR and the Trump Group agreed, pursuant to the 2008 Stock Purchase Agreement and Side Letter, to transfer these shares outside the terms of the 2001 TRI Stockholders Agreement.[3]

Thus, contrary to the argument presented by TPR and Sagi, the Court in its June 14, 2012 Order did **not** impose a stay solely so the state courts could determine the now-moot issue of beneficial ownership. Instead, in the Order staying this action, the Court also expressly stated its intent to allow "a court with jurisdiction over all relevant parties to decide the beneficial ownership issues at the heart of this case, **along with the countless related tort and contract claims.**" June 14, 2012 Order at p. 50. Arie – along with all of the other parties to the State

---

[3] *See* June 14, 2012 Order at p. 40 ("As the Trump Group obtained the invalidly transferred shares pursuant to the 2008 side agreements with TPR, the initial *Glenclova* complaint is essentially moot. . . . Thus, the *Glenclova* controversy has shifted to third-party litigation of claims identical to the claims being litigation in New York Supreme Court."); *see also TR Investors, LLC v. Genger*, 2010 WL 2901704, at *18-19 (referring to the 2008 agreement between the Trump Group and TPR as a "broad settlement," and noting that "the Trump Group settled TPR's violation of [the 2001 TRI Stockholders Agreement] by accepting the shares on the terms negotiated").

3

Court Action, TPR and Sagi included – are vigorously litigating their tort, equitable, and contract claims in the State Court Action, just as this Court envisioned when it issued the June 14, 2012. All of the issues, claims and parties necessary to finally resolve the outstanding disputes between the parties are currently before the New York state court. The same cannot be said of this action, which is missing multiple parties – including Orly, the Orly Trust, and William Dowd – as well as many active claims – including claims asserted by TPR and Sagi against, *inter alia*, the Trump Group. *See* First Amended Answer, Counterclaims, Cross-Claims, and Third-Party Complaint of Sagi Genger, Individually and as Assignee of the Sagi Genger 1993 Trust, and TPR Investment Associates, Inc., Declaration of Lauren J. Wachtler dated September 13, 2012, Exhibit 1. The claims asserted by TPR in the New York Action are more extensive than, but inclusive of, the claims asserted by TPR in this action. *Compare id.* (asserting ten claims for relief against twelve defendants) *with* Answer and Third-Party Complaint of TPR Investment Associates, Inc., Doc. No. 38, Wachtler Decl., Ex. 2 (asserting eight claims against one defendant, Arie). This case should remain stayed and closed until the litigation in the State Court Action, which will determine every issue remaining in this action, in addition to many more related issues, is fully resolved.

## II.    Arie Is Actively Litigating His Claims For Unjust Enrichment And Breach of Fiduciary Duty In The State Court Action

Even more inaccurate than its characterization of this Court's June 14, 2012 Order is TPR's and Sagi's implication that, by her January 3, 2013 Decision and Order, Justice Jaffe dismissed all of Arie's claims against TPR and Sagi in the State Court Action. That implication is entirely false. To the contrary, Arie's claims for unjust enrichment against TPR, and for unjust enrichment and breach of fiduciary duty against Sagi, unambiguously survived those parties'

4

motion to dismiss, and are currently being actively litigated. *See* January 3, 2013 Decision and Order, Wachtler Decl., Ex. 3. These claims specifically include Arie's claims to $7.4 million in proceeds received by TPR for its sale of the Arie Shares to the Trump Group, which proceeds are the subject of a pending motion for an order of attachment against TPR, which is before the New York state court right now. *See* Wachtler Decl., Ex. 4. This is in addition to Arie's claims for money damages resulting from the improper sale of the Arie Shares by TPR. Similar claims for unjust enrichment and breach of fiduciary duty asserted by Orly – who, again, is not even before this Court – also remain active in the State Court Action.

Moreover, the March 1, 2013 Final Judgment Order of Delaware Chancery Court Delaware granting the Trump Group legal and beneficial ownership of the Arie Shares, *in specie*, (which was on appeal to the Delaware Supreme Court when Arie settled the Delaware action with the Trump Group, rendering the appeal and the prior holding in favor of the Trump Group moot) did **not** preclude Arie's claims to the proceeds from the sale of his shares that have since been released to TPR, and did **not** preclude in any way Arie's tort and unjust enrichment claims against TPR that are still pending before the New York Court and that are actively being litigated in New York State Court. To the contrary, Arie specifically reserved his claims against TPR and Sagi in the stipulation of voluntary dismissal that was so-ordered by the New York state court. *See* Wachtler Decl., Ex. 5.

In fact, Chancellor Strine made it absolutely clear that neither his 2010 rulings nor his 2013 rulings meant that TPR would be entitled to keep the $7.4 million in proceeds from the Arie Shares that are currently in dispute in the State Court Action. In fact, Chancellor Strine said that to do so would constitute blatant unjust enrichment and that he could not imagine that the

5

New York courts would permit such an inequitable result. On August 1st, a month ago, Chancellor Strine explained:

> I was clear on this from the beginning: Dividing up the pie claims, whether your client [Sagi] was a faithful – whether what he did with those proceeds was fair to others who may have had an equitable entitlement to them, that was for the New York courts. And so you want to keep that in mind, because this idea, again, this free lunch concept that this was just Sagi's greatest day, . . . I do, frankly, put a low probability on the notion that a judge in New York is going to conclude that Sagi won the Powerball.

Wachtler Decl., Ex. 6 at 69, 74.

In fact, Chancellor Strine told TPR's counsel in no uncertain terms that equity would not condone TPR keeping all the proceeds from the sale of those shares:

> But that, from a fundamental equitable basis, the idea that – again, that the world – that this was just a Powerball ticket handed to Sagi Genger; that this lack of notice [required by the 2001 TRI Stockholders Agreement] gave him [Sagi *qua* TPR] all the family wealth . . . strikes me as why courts of equity were ever founded. It seems capricious."

Wachtler Decl., Ex. 6 at 38-39.

Further proof of the continued vitality of Arie's claim to this $7.4 million in proceeds from the sale of the Arie Shares comes from the appeal from the Delaware Final Judgment Order filed by TPR, itself, wherein TPR asked that the Chancery Court be reversed insofar as it held that its rulings in that case would not have preclusive effect on Arie's equitable claims in New York. Specifically, at page 4 of its opening brief, TPR wrote:

> Unfortunately, however, the Court of Chancery went beyond deciding the issues before it, and proceeded to comment in its Opinion on the supposed non-preclusive effect of the Delaware proceedings on the New York Action. Specifically, the Court wrote:

6

> . . . It may be that [Arie] Genger . . . [has] a claim against
> the TPR and Sagi [Genger, TPR's President] for some sort
> of breach of an implied equitable duty in the way in which
> the proceeds from the sale of the TPR's stake in [Trans-
> Resources] were allocated.
>
> [citation omitted] Implicit in the Commentary is the view that
> these Delaware proceedings will not have preclusive effect on the
> New York Action.

Wachtler Decl., Ex. 7 at p. 4. Then, TPR argued to the Delaware Supreme Court that it should:

> reverse and strike those portions of the Opinion and the Judgment
> in which the Court of Chancery commented on the potential for
> Arie Genger to assert other claims against TPR and Sagi Genger
> and, by implication, on the non-preclusive effect of the Delaware
> proceedings on the New York Action.

*Id.* TPR has now withdrawn its appeal to the Delaware Supreme Court, but these statements make clear that even TPR anticipated that Arie's tort and equitable claims would be resolved in the New York state court litigation (which TPR then referred to as the "New York Action"). *Id.* at p. 2.

Also, any suggestion by TPR or Sagi that the State Court Action has not moved, or that the parties have not been involved in highly active litigation since this Court's June 14, 2012 Order, is verifiably false. For much of the past fifteen months, Arie, TPR, and the Trump Group continued to litigate before the Delaware Court of Chancery, leading to the entry of that Court's March 1, 2013 Final Judgment Order, the subsequent appeal of that Order by both Arie and TPR to the Delaware Supreme Court, and a final settlement of all claims between the Trump Group, Arie and Orly – and all Delaware actions between the Trump Group and Arie have been dismissed with prejudice. Likewise, all New York State claims between Arie and the Trump Group are now settled.

7

In the meantime, however, there has also been, and continues to be, a high level of activity in the State Court Action itself. A quick review of the docket for the State Court Action shows there are nearly **400** separate docket entries for the New York State Action since this Court's June 14, 2012 Order. Wachtler Decl., Ex. 8. Indeed, two motions filed by TPR and Sagi in the past three months alone are *sub judice*. Wachtler Decl., Ex. 9. Also during this time, the parties have served demands for the production of documents, and noticed multiple depositions. The New York state court just recently issued a revised discovery schedule under which all discovery is set to conclude by November 15, 2013.[4] Yet despite the fact that all document production should be completed by September 30, 2013, TPR and Sagi have completely stonewalled Arie's attempts to obtain discovery in the State Court Action, failing thus far to produce **any** documents in response to Arie's discovery demands in that action. This failure by TPR and Sagi to produce documents has resulted in a delay in commencement of depositions and a delay of discovery in the New York State action. Yet, TPR and Sagi disingenuously suggest that Arie has not been vigorously pursuing his claims in the State Court Action. Nonsense.

---

[4] The full discovery schedule, which was entered on August 27, 2013, is as follows:

(1) All document production shall be completed by September 30, 2013;
(2) Third-Party Defendant William Dowd shall provide written responses and documents in response to the discovery requests served upon him by the Trump Group by September 30, 2013;
(3) All party depositions shall be completed by October 30, 2013;
(4) All non-party fact depositions shall be completed by November 15, 2013;
(5) Plaintiffs shall file a note of issue on or before December 11, 2013;
(6) The compliance conference currently scheduled for August 28, 2013 is adjourned until October 16, 2013, or as soon thereafter as the Court's schedule permits.

Wachtler Decl., Ex. 10.

Likewise, TPR argues that Arie has not been diligent in perfecting his appeal of the New York state court's January 3, 2013 Decision and Order regarding the various defendants' motions to dismiss. But as discussed, Arie is pursuing his active tort and equitable claims against TPR and Sagi in the State Court Action, which were not dismissed, irrespective of Arie's interlocutory appeal from those claims against TPR and Sagi that were dismissed. And while Arie still fully intends to perfect that interlocutory appeal of claims dismissed against TPR and Sagi, Arie is not required to perfect his appeal until October 18, 2013 – and Arie has had good reason for waiting to perfect his appeal. Notably, the interlocutory nature of Arie's appeal has been complicated by activity subsequent to the January 3, 2013 Decision and Order, dismissing some of its claims, including the later rulings by Chancellor Strine in Delaware, as well as Arie's settlement of his claims with the Trump Group. It should also be noted that TPR itself filed a notice of appeal in connection with the January 3, 2013 Decision and Order, but has not taken any action to perfect that appeal. Also, all parties have suggested that they intend to make motions for summary judgment after discovery is completed, which will implicate many of the same legal issues raised by the motion to dismiss appeal, but would be affected by a different record and procedural posture of the case.

### III. The June 14, 2012 Stay Order Does Not Prejudice TPR or Sagi

TPR's protestations of purported "prejudice" are hollow. TPR claims in its moving papers that it "wishes to resolve [the] five-year old claims against it, as well as its own third-party claims against [Arie]." Br. at 4. But TPR can do just that in the State Court Action, without reopening this case. Notably, the original claims asserted by Glenclova against TPR in this action have not been in play for more than 5 years – a fact recognized by Chancellor Strine

back in 2010, and by this Court in its June 14, 2012 Order. *See TR Investors, LLC v. Genger*, 2010 WL 2901704, at *18-19; June 14, 2012 Order at p. 40. To the extent there is any question regarding the effect of the 2008 Agreement between TPR and the Trump Group, these issues are already before the New York state court, which is fully capable of resolving them. In addition, Orly's claims are likewise before the New York State Court, and neither Orly nor the Orly Trust is before this Court.

The other "prejudice" raised by TPR in its papers in support of reopening this litigation is that the Trump Group has made counterclaims in the New York state court action that are premised in part upon the 2008 Stock Purchase Agreement and Side Letter entered into between TPR and the Trump Group. Br. at 5. In its counterclaims in the pending New York State Court Action, the Trump Group refers to the fact that this Court did not grant the specific performance requested in the original *Glenclova* action. *See* Wachtler Decl., Ex. 11, at ¶ 75 ("Because Glenclova has not been awarded specific performance in the Federal Action, under the [2008 Stock purchase Agreement], Glenclova, Investors, Equity I and Equity II were assigned the right, title and interest in and to any claims or causes of action that TPR may have or may have had against Genger and/or the Orly Trust relating to, or arising from, the 2004 Transfers."). TPR says it "takes issue" with the Trump Group's interpretation of the 2008 Stockholders Agreement and Side Letter raised in the Trump Group's state court Counterclaim, but this argument is not at issue before this Court. Instead, as TPR concedes, this issue was asserted by the Trump Group in the State Court Action. In essence, TPR is asking this Court to reopen an entirely separate litigation, and assert a new claim asking this Court to interpret a 2008 Stock Purchase Agreement

10

on a new issue not previously pleaded in this case, and which is already at issue in claims pending in the State Court Action. The absurdity of this request is pronounced.

## Conclusion

None of the purported reasons presented by TPR and Sagi warrant lifting the stay of this action imposed in the June 14, 2012 Order. Under these circumstances, where the all of the issues between the parties can and will be resolved in the State Court Action, TPR's request to lift the stay of this action should be denied outright, and that stay should be maintained pending the final resolution of Arie's claims in the State Court Action.

DATED:  New York, New York  
          September 13, 2013

MITCHELL SILBERBERG & KNUPP LLP

By: *[signature]*  
Lauren J. Wachtler (ljw@msk.com)  
Paul D. Montclare (pdm@msk.com)  
12 East 49th Street, 30th Floor  
New York, New York 10017-1028  
Telephone: (212) 509-3900  
Facsimile: (212) 509-7239

*Attorneys for Arie Genger*